UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


FREDRICK HERMAN FISHER,

               Plaintiff,                      CIVIL ACTION NO. 04-72102

             v.                        DISTRICT JUDGE ROBERT H. CLELAND

GEORGE PRAMSTALLER,                  MAGISTRATE JUDGE VIRGINIA M.
                                                 MORGAN
DR. CRAIG HUTCHINSON,
GREGORY NAYLOR, JAN EPP,
VALORIE HAMMOND, JENNIFER
ENGSTROM, SHERRI GREGUREK,
DR. A. FAGHIHNIA, MARY LOU
SWEETON, DOUG VASBINDER,
BRUCE CUMMINGS, JONATHA
MAYSTEAD, and JACKIE COOKE,

               Defendants.
_____/

## REPORT AND RECOMMENDATION

### I.  Introduction

       This matter comes before the court on (1) Plaintiff's Motion for Summary Judgment (D/E

#83), (2) Defendant Hutchinson's Motion for Summary Judgment (D/E #85), and (3) Defendants

Pramstaller, Naylor, Epp, Engstrom, Gerguerk, Sweeton, Cooke, Maystead, Cummings,

Vasbinder, and Hammond's Motion for Summary Judgment (D/E #86).  For the reasons stated

below, this court recommends that plaintiff's motion for summary judgment be **DENIED** and

that Hutchinson's motion for summary judgment be **GRANTED**.  This court also recommends

that Pramstaller, Naylor, Epp, Engstrom, Gerguerk, Sweeton, Cooke, Maystead, Cummings, Vasbinder, and Hammond's motion for summary judgment be **GRANTED IN PART** and **DENIED IN PART**, with only Cooke, Maystead, Cummings and Vasbinder being granted summary judgment. The claims against Pramstaller, Naylor, Epp, Engstrom, Gerguerk, Sweeton and Hammond should proceed.

## II. Background

### A. Procedural History

Plaintiff, an inmate at the Southern Michigan Correctional Facility, Jackson, Michigan, filed a *pro se* civil rights action under 42 U.S.C. §§ 1983 and 1985[1] against various Michigan Department of Corrections (MDOC) officials, employees, and agents, alleging that they denied him necessary medical care in violation of the Eighth Amendment, that they retaliated against him for filing grievances regarding his medical care in violation of the First Amendment, and that they conspired to obstruct justice.[2]

---

[1] Plaintiff's original complaint (D/E # 3) only included the 42 U.S.C. § 1983 claim, but this Court subsequently construed a brief of plaintiff's as an amended complaint adding additional defendants with respect to a 42 U.S.C. § 1985 claim (D/E # 7-8).

[2] The named defendants are (1) George Pramstaller, the Chief Medical Officer for the MDOC, (2) Dr. Craig Hutchinson, (3) Gregory Naylor, the Chief of Clinical Services for the Jackson Medical Complex, (4) Jan Epp, an MDOC health care administrator, (5) Valorie Hammond, a health unit manager at the Southern Michigan Correctional Facility, (6) Jennifer Engstrom, an MDOC employee, (7) Sherri Gregurek, the Nurse Supervisor at the Southern Michigan Correctional Facility, (8) Dr. A. Faghihnia, (9) Mary Lou Sweeton, a nurse at the Cooper Street Correctional Facility, (10) Warren Douglas Vasbinder, the Warden of the Cooper Street Correctional Facility, (11) Bruce Cummings, an Assistant Deputy Warden at the Cooper Street Correctional Facility, (12) Jonatha Maystead, a librarian at the Cooper Street Correctional Facility, and (13) Jackie Cooke, a library assistant at the Cooper Street Correctional Facility.

With respect to his medical care, plaintiff specifically alleged that he was denied a necessary operation on his right eye, a colonoscopy, corrective surgery on his left elbow, and proper pain medication for his arthritis (Complaint, ¶¶ 3-13). According to plaintiff, he has been approved or recommended for eye surgery three times; November 2001, October 13, 2003, and March 3, 2004 (Complaint, ¶¶ 7-9), but defendants either cancelled the surgery, briefly transferred plaintiff to another correctional facility to prevent further care, or ignored the recommendation (Complaint, ¶¶ 6, 8-9).

Plaintiff has also allegedly been denied a colonoscopy necessary to prevent colon cancer since July 2002 (Complaint, ¶¶ 10-11). While a colonoscopy has been scheduled twice; April 2, 2003 and June 2003, plaintiff did not properly prepare either time and the colonoscopy could not be performed (Complaint, ¶¶ 10-11).

According to plaintiff, while a private doctor recommended that plaintiff have reconstructive surgery on his left elbow eight months before plaintiff's incarceration, defendants refuse to send plaintiff to see a doctor of orthopedics (Complaint, ¶ 12).

With respect to the retaliation claims, plaintiff alleged that Pramstaller cancelled plaintiff's right eye surgery after receiving letters of complaint from plaintiff (Complaint, ¶¶ 6, 13), that Faghihnia and Sweeton threatened, assaulted and attempted to kill plaintiff (Complaint, ¶ 14), and that Correctional Medical Services, Inc. ("CMS") doctors and nurses are denying plaintiff treatment so that plaintiff will go blind or die from colon cancer (Complaint, ¶ 14).

With respect to the § 1985 claim, plaintiff alleged that Vasbinder, Cummings, Maystead and Cooke conspired to obstruct justice by stealing some of plaintiff's legal documents, instead

of copying them as should have been done, and covering up the theft (First Amended Complaint, ¶¶ 1-6).

On October 15, 2004, in response to a motion to dismiss filed by defendants, this Court filed a Report and Recommendation stating that plaintiff's action should be dismissed pursuant to 42 U.S.C. §1997e(a) for failure to exhaust administrative remedies (D/E #37). On November 30, 2004, United States District Court Judge Robert H. Cleland issued an order accepting the Report and Recommendation and dismissing the complaint pursuant to 42 U.S.C. §1997e(a) (D/E #46).

On December 22, 2004, plaintiff filed a notice of appeal of that order (D/E #51). On February 1, 2007, the Sixth Circuit reversed the district court's full dismissal of Fisher's complaint, and remanded the case for further proceedings consistent with Jones v. Bock, __ U.S. __, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007) (D/E # 57).

On May 21, 2007, defendants filed an Identification of Exhausted Claims asserting which of plaintiff's claims, in defendants' view, were fully exhausted and therefore still before the court (D/E #67 and #68). On September 21, 2007, this Court issued an order finding that, pursuant to the law of the case doctrine[3], the findings of District Court Judge Cleland in his November 30, 2004 order regarding which claims were exhausted were binding for this litigation and, therefore, only plaintiff's Eighth Amendment claims of deliberate indifference against the

---

[3]"Under the doctrine of law of the case, findings made at one point in the litigation become the law of the case for subsequent stages of that same litigation." United States v. Moored, 38 F.3d 1419, 1421 (6th Cir.1994) (citing United States v. Bell, 988 F.2d 247, 250 (1st Cir.1993)).

defendants named in grievances JMF2003070412D2 and MBP03110289228B were fully exhausted and could go forward (D/E #81).  In those grievances, plaintiff alleged a denial of eye surgery, denial of a colonoscopy, and inadequate treatment of his left elbow (Grievances JMF2003070412D2 and MBP03110289228B, attached as Exhibits 1 and 2 to Sweeton, Cooke, Maystead, Cummings, Vasbinder, Pramstaller, Hammond, Naylor, Epp, Engstrom and Gerguerk's Motion for Summary Judgment).

**B.  Motions before the Court**

On October 19, 2007, plaintiff filed a motion for summary judgment (D/E #83).  In that motion, plaintiff repeats his claims and provides evidence in support of them: an accompanying affidavit from plaintiff confirming his claims and some medical reports.  The medical evidence includes a August 18, 2006 note stating that plaintiff was complaining of elbow pain and that an X-ray showed degenerative changes.  The medical evidence also included a September 19, 2006 note stating that plaintiff had been provided a sling and an October 27, 2006 special accommodation notice providing that plaintiff needed, among other things, to be off work, use a cane, have assistance at meals and have an extra pillow.  Plaintiff further provided an undated consultation report from an orthopedic specialty clinic and a July 12, 2004 operative report made following an incomplete colonoscopy.  The colonoscopy was not completed because of an extremely redundant colon.

On November 8, 2007, Hutchinson filed a response to plaintiff's motion for summary judgment (D/E #89).  In that response, Hutchinson argues that plaintiff is not entitled to summary judgment as to the deliberate indifference claim against Hutchinson because, at the

very least, a genuine issue of material fact exists as to whether plaintiff had a serious medical need or whether Hutchinson was deliberately indifferent to plaintiff's medical needs. According to Hutchinson, plaintiff's medical records display that plaintiff received extensive treatment. Hutchinson also notes that plaintiff's complaint and the medical records fail to show that Hutchinson was involved in plaintiff's care (other than sitting on a Medical Services Advisory Committee) or that he denied or delayed any treatment.

On November 20, 2007, Sweeton, Cooke, Maystead, Cummings, Vasbinder, Pramstaller, Hammond, Naylor, Epp, Engstrom and Gerguerk filed a response to plaintiff's motion for summary judgment (D/E #90).[4] In that response, they first argue that plaintiff is not entitled to summary judgment as to his 42 U.S.C. § 1985 claim because the claim was not properly exhausted, as set forth in this Court's September 21, 2007 order. Defendants also argue that plaintiff is not entitled to summary judgment as to his deliberate indifference claim because plaintiff completely failed to come forward with evidence that defendants were subjectively aware of plaintiff's medical needs and, instead, only came forward with evidence that there may have been problems with plaintiff's medical care.

On October 22, 2007, Hutchinson filed a motion for summary judgment (D/E #85). In that motion, Hutchinson argues that plaintiff has failed to demonstrate that a genuine issue of material fact exists as to whether plaintiff had a serious medical need or whether Hutchinson was

---

[4]On the docket sheet for this case, defendants' response is misidentified as a response to DE #86, their own motion for summary judgment, instead of as a response to plaintiff's motion for summary judgment.

deliberately indifferent to plaintiff's medical needs. According to Hutchinson, plaintiff's medical records display that plaintiff received extensive treatment. Hutchinson also notes that plaintiff's complaint and the medical records fail to show that Hutchinson was involved in plaintiff's care other than sitting on a Medical Services Advisory Committee, or that he denied or delayed any treatment.

On October 22, 2007, Sweeton, Cooke, Maystead, Cummings, Vasbinder, Pramstaller, Hammond, Naylor, Epp, Engstrom and Gerguerk also filed a motion for summary judgment (D/E # 86). In that motion, they argue that Vasbinder, Cummings, Maystead and Cooke were only name in the unexhausted 42 U.S.C. § 1985 claims and therefore should be dismissed from the action. Defendants also argue that Sweeton, Pramstaller, Hammond, Naylor, Epp, Engstrom and Gerguerk were not deliberately indifferent to a substantial risk of serious harm to plaintiff and that, therefore, they are entitled to summary judgment in their favor. According to defendants, the evidence shows that plaintiff received medical treatment and that plaintiff is merely questioning their medical judgment, instead of demonstrating deliberate indifference. Defendants further argue that they are entitled to qualified immunity and summary judgment because plaintiff has failed to show that defendants violated his clearly established statutory or constitutional rights. According to defendants, even if plaintiff has stated a claim, defendants are entitled to qualified immunity because the law was not clearly established.

On November 26, 2007, plaintiff filed a response to defendants' motions for summary judgment (D/E #94). In that response, plaintiff argues that his medical records establish that, while defendants knew that plaintiff was repeatedly approved or recommended for eye surgery,

they prevented it until September 15, 2004. Plaintiff also argued that, while MDOC and CMS ordered an offsite visit to see a doctor of orthopedic surgery as early as August 22, 2002, defendants prevented plaintiff from seeing an orthopedic surgeon and have left plaintiff in pain and suffering, and without any sort of medical treatment besides a sling, for years. Plaintiff further argues that defendants knew that plaintiff had a history of colon problems when he arrived at the prison, but they have denied plaintiff's attempts to have a yearly colonoscopy.

### III.  Standard of Review

All three motions move for summary judgment pursuant to Federal Rule of Civil Procedure 56(b), which states that "[a] party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move without or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-movant. See Matsushita Electric Industrial Co., Ltd. et al. v. Zenith Radio Corp., et. al., 475 U.S. 547, 587, 106 S.Ct. 1348, 1356 (1986); see also B.F. Goodrich Co. v. U.S. Filter Corp., 245 F.3d 587, 591-92 (6th Cir. 2001). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Once the moving party has carried his burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial."

Matsushita, 475 U.S. at 587, 106 S.Ct. 1348. The opposing party cannot merely rest upon the allegations contained in his pleadings. Rather, he must submit evidence demonstrating that material issues of fact exist. Banks v. Wolfe County Bd. of Educ., 330 F.3d 888, 892 (6th Cir. 2003); Fed. R. Civ. P. 56(e). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587, quoting First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 289, 88 S.Ct. 1575, 1592 (1968)).

## IV. Discussion

As discussed above, pursuant to the law of the case doctrine, only plaintiff's Eighth Amendment claims of deliberate indifference were fully exhausted and, therefore, allowed to go forward. A prisoner's claim that his constitutional right to medical treatment was violated is analyzed under the Eighth Amendment. See Estelle v. Gamble, 429 U.S. 97, 103-104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). To state a § 1983 claim for a violation of a prisoner's Eighth Amendment rights due to inadequate medical care, the prisoner must allege facts evidencing a deliberate indifference to serious medical needs. Wilson v. Seiter, 501 U.S. 294, 297, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991).

To succeed on a claim of deliberate indifference, plaintiff must satisfy two elements, an objective one and a subjective one. Wilson, 501 U.S. at 300. The objective element is satisfied by a showing that plaintiff had a serious medical need. Wilson, 501 U.S. at 297. "'Where the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person,' this obviousness is itself sufficient to satisfy the objective component of the adequate medical care

test." Johnson v. Karnes, 398 F.3d 868, 874 (6th Cir. 2005), quoting Blackmore v. Kalamazoo County, 390 F.3d 890, 899 (6th Cir. 2004).  However if the need involves minor needs or non-obvious complaints of a serious need for medical care and the plaintiff alleges that a delay in treatment constituted the constitutional violation, the plaintiff "'must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment.'" Johnson, 398 F.3d at 874, quoting Napier v. Madison County, Kentucky, 238 F.3d 739, 742 (6th Cir. 2001).  To satisfy the subjective component of the adequate medical care test, the plaintiff must demonstrate that the defendant "subjectively perceived a risk of harm and then disregarded it."  Comstock v. McCrary, 273 F.3d 693, 703 (6th Cir. 2001).

Deliberate indifference is characterized by obduracy and wantonness, not inadvertence or good faith error.  Gibson v. Foltz, 963 F.2d 851, 853 (6th Cir. 1992).  Moreover, where the prisoner has received some medical attention and the dispute is over the adequacy of the treatment, courts are reluctant to second guess medical judgments, Westlake v. Lucas, 537 F.2d 857, 860 n. 5 (6th Cir. 1976), and deliberate indifference does not include negligence in diagnosing a medical condition.  Sanderfer v. Nichols, 62 F.3d 151, 154 (6th Cir. 1995) (citations omitted).  However, it is not necessary for a plaintiff to "show that the official acted 'for the very purpose of causing harm or with knowledge that harm will result.'"  Comstock, 273 F.3d at 703, quoting Farmer, 511 U.S. at 835.  Put simply, "deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk."  Comstock, 273 F.3d at 703, quoting Farmer, 511 U.S. at 835.

### A.  Plaintiff's Motion for Summary Judgment

### 1. § 1985 Claim

As discussed above, both the November 30, 2004 of Judge Cleland (D/E #46) and the September 21, 2007 order of Magistrate Judge Morgan (D/E #81) found that plaintiff failed to properly exhaust his § 1985 conspiracy to obstruct justice claim. Given plaintiff's failure to exhaust that claim, he is clearly not entitled to summary judgment on it.

### 2. § 1983 Claims

As discussed above, plaintiff did exhaust his administrative grievances with respect to his claims that defendants denied plaintiff proper treatment with regard to his eye, a colonoscopy, and his left elbow. However, while plaintiff properly exhausted his administrative remedies, he should not be granted summary judgment on his claims because genuine issues of fact exist as to whether defendants were personally involved in plaintiff's medical care and whether plaintiff was denied adequate medical care in deliberate indifference.

#### a. Eye Surgery

With respect to the alleged denial of eye surgery, plaintiff's affidavit states that, on September 15, 2004, plaintiff was taken in for eye surgery, but he only received a corneal transplant and not a lens implant as scheduled (Plaintiff's Affidavit, attached to Plaintiff's Motion for Summary Judgment, ¶ 7). According to plaintiff, he did not receive the lens implant because the transport officers accompanying him to the surgery, who were named Lewis and Martinez, refused to remove plaintiff's restraints, which prevented plaintiff from receiving I.V. fluids into his hands (Plaintiff's Affidavit, attached to Plaintiff's Motion for Summary Judgment,

¶ 7). Without any fluids, the lens implant could not be completed (Plaintiff's Affidavit, attached to Plaintiff's Motion for Summary Judgment, ¶ 7).

In both of the responses, defendants correctly note that plaintiff's evidence in support of his denial of eye surgery claim consists solely of his affidavit and that the affidavit fails to even mention any of the defendants. Instead, plaintiff's affidavit provides that plaintiff underwent eye surgery, but that the eye surgery was not completed because of the actions of Lewis and Martinez. To succeed in a claim under § 1983, a plaintiff must show personal involvement by the defendant in the constitutional violation. Copeland v. Machulis, 57 F.3d 476, 481 (6th Cir.1995) (per curiam). In this case, with respect to the alleged denial of eye surgery, plaintiff has failed to make any such showing of personal involvement and he is therefore not entitled to summary judgment.

Additionally, in Hutchinson's response to plaintiff's motion for summary judgment, Hutchinson provided medical evidence detailing the numerous times plaintiff's eyes were examined in 2003 and 2004 (Exhibit 1 to Hutchinson's Response to Plaintiff's Motion for Summary Judgment, pp. 30, 35, 49, 97, 149). On the basis of that evidence, Hutchinson argues, without citing any specific examples supporting his position, that plaintiff never had a serious medical need with respect to his eyes. However, other evidence provided by Hutchinson demonstrates that plaintiff was diagnosed with bullous keraptopathy (Exhibit 1 to Hutchinson's Response to Plaintiff's Motion for Summary Judgment, p. 35), complained of pain and headaches (Exhibit 1 to Hutchinson's Response to Plaintiff's Motion for Summary Judgment, pp. 35, 163), was recommended for eye surgery by Dr. Lavery (Exhibit 1 to Hutchinson's

Response to Plaintiff's Motion for Summary Judgment, p, 35, 163), had a corneal transplant approved twice (Exhibit 1 to Hutchinson's Response to Plaintiff's Motion for Summary Judgment, pp. 152, 188), and eventually received surgery to relieve his pain (Exhibit 1 to Hutchinson's Response to Plaintiff's Motion for Summary Judgment, pp. 143-144). Given that evidence, Hutchinson has failed to demonstrate that a genuine issue of material fact exists with respect to whether his eye problems were a serious medical need and he cannot avoid summary judgment on that basis.

### b. Colonoscopy

With respect to the alleged denial of a colonoscopy, while plaintiff asserted in his complaint that defendants have been denying him a colonoscopy since September 26, 2001, the only evidence he provides is an operative report showing that, on July 12, 2004, he underwent an incomplete colonoscopy, performed by Dr. Ilyas Hussain (Operative Report, attached to Plaintiff's Motion for Summary Judgment, pp. 1-2). The colonoscopy was not completed because of an "extremely redundant colon" (Operative Report, attached to Plaintiff's Motion for Summary Judgment, p. 2). After the colonoscopy, Dr. Hussain wrote that plaintiff should maintain a high fiber diet, undergo a barium enema, and take some sort of fiber supplement (Operative Report, attached to Plaintiff's Motion for Summary Judgment, p. 2). If the barium enema was negative, plaintiff was to have a repeat colonoscopy in five years (Operative Report, attached to Plaintiff's Motion for Summary Judgment, p. 2).

In both of the responses, defendants correctly note that plaintiff's evidence in support of his denial of a colonoscopy claim consists solely of the operative report and that the operative

report fails to even mention any of the defendants.  Instead, the operative report provides that plaintiff went to Dr. Hussain for a colonoscopy, but that the colonoscopy was not completed because of plaintiff's extremely redundant colon.  To succeed in a claim under § 1983, a plaintiff must show personal involvement by the defendant in the constitutional violation.  <u>Copeland</u>, 57 F.3d at 481.  In this case, with respect to the alleged denial of a colonoscopy, plaintiff has failed to make any such showing of personal involvement and he is therefore not entitled to summary judgment.

Moreover, as both responses by defendants point out, plaintiff's own evidence contradicts his deliberate indifference claim and establishes that a genuine issue of material fact is in dispute.  In this case, plaintiff's evidence shows that his colonoscopy was not completed because of plaintiff's extremely redundant colon and that Dr. Hussain expressly found that another colonoscopy was not necessary for five years, provided that the barium enema was negative.  Such evidence suggests that plaintiff did not have a serious medical need or, assuming he did, that defendants did not subjectively ignore that serious medical need because a colonoscopy was attempted and another one was not necessary in the medical judgment of Dr. Hussain.  Given those genuine issues of material fact, plaintiff is not entitled to summary judgment with respect to his deliberate indifference claim based on a denial of a colonoscopy.

In addition to pointing out the genuine issue of material fact created by plaintiff's own evidence, Hutchinson provided other evidence demonstrating that, at the very least, a genuine issue of material fact exists in this case on the issue of deliberate indifference.  Hutchinson provided evidence that a colonoscopy had also been attempted in April 2003, but that it was not

completed because of insufficient prepping by plaintiff prior to the surgery (Exhibit A to Hutchinson's Motion for Summary Judgment, pp. 85, 190).[5]  A barium enema was performed in August 2004  (Exhibit A to Hutchinson's Motion for Summary Judgment, pp. 156-157). Plaintiff was examined by Dr. Gregory Casey on March 16, 2004  (Exhibit A to Hutchinson's Motion for Summary Judgment, p. 176), and another barium enema was performed on February 14, 2006  (Exhibit A to Hutchinson's Motion for Summary Judgment, pp. 219, 612).  Most recently, a Dr. Ullah performed a colonoscopy on May 18, 2006.  That colonoscopy revealed no new polyps or signs of cancer and Dr. Ullah recommended that another colonoscopy be done in three years (Exhibit 1 to Hutchinson's Response to Plaintiff's Motion for Summary Judgment, pp. 170, 270).  Given the amount of tests performed, as well as the results of those tests, Hutchinson has demonstrated that, at the very least, a genuine issue of material fact exists with regard to whether plaintiff had a serious medical need and whether Hutchinson was deliberately indifferent to any serious medical need.

### c.  Left Elbow

With respect to the alleged denial of left elbow treatment, plaintiff's affidavit stated that, following his injury, MDOC and CMS refused to allow plaintiff to see a doctor of orthopedic surgery and merely issued him a cane (Plaintiff's Affidavit, attached to Plaintiff's Motion for Summary Judgment, ¶ 6).  Plaintiff also provided an August 18, 2006 note from Nancy L. Burns, RN, providing that plaintiff was complained about continuing elbow pain, that plaintiff stated the

---

[5]Hutchinson incorporated the exhibits from his own motion for summary judgment to his response to plaintiff's motion for summary judgment (Hutchinson's Response to Plaintiff's Motion for Summary Judgment, p. 3 n. 5).

sling helps, and that Burns made an appointment for plaintiff (MDOC SOAP Note Summary, p. 3 of exhibits to Plaintiff's Motion for Summary Judgment). Plaintiff further provided an October 27, 2006 Special Accommodation Notice noting, among other things, that plaintiff was restricted from work and provided a cane (MDOC Special Accommodation Notice, p. 3 of exhibits to Plaintiff's Motion for Summary Judgment), and a September 19, 2006 note from Susan J. Hogan, RN, stating that plaintiff was to be provided a left arm sling effective from that date through March 31, 2007 (MDOC Medical Detail, p. 1 of exhibits to Plaintiff's Motion for Summary Judgment). Lastly, plaintiff provided a September 26, 2006 consultation request from a Dr. Allard seeking a referral to an orthopedic specialty clinic (Consultation Request, pp. 4-5 of exhibits to Plaintiff's Motion for Summary Judgment). That consultation request described plaintiff's current medications and noted that he was wearing a sling at all times.

In both of the responses to plaintiff's motion for summary judgment, defendants correctly note that none of the evidence provided by plaintiff mentions any of the defendants; plaintiff's affidavit merely states that MDOC and CMS denied him treatment while the medical records describe the manner in which Nurse Burns, Nurse Hogan and Dr. Allard provided treatment. To succeed in a claim under § 1983, a plaintiff must show personal involvement by the defendant in the constitutional violation. Copeland v. Machulis, 57 F.3d 476, 481 (6th Cir.1995) (per curiam). In this case, with respect to the alleged denial of elbow treatment, plaintiff has failed to make any such showing of personal involvement and he is therefore not entitled to summary judgment.

Moreover, as both responses by defendants point out, plaintiff's own evidence contradicts his deliberate indifference claim and establishes that a genuine issue of material fact is in dispute. In this case, plaintiff's own evidence shows that he received treatment for his elbow problems, was provided with a cane, and he was prescribed medications. Given that evidence, while it appears plaintiff never received the surgery he sought, he was clearly provided medical treatment and is a genuine issue of material fact exists as to whether any of the defendants were deliberately indifferent to plaintiff's serious medical needs, assuming they were even involved in plaintiff's treatment.

In addition to pointing out the genuine issue of material fact created by plaintiff's own evidence, Hutchinson provided other evidence demonstrating that, at the very least, a genuine issue of material fact exists in this case on the issue of deliberate indifference. Specifically, Hutchinson provided two medical reports where staff deemed plaintiff's complaints routine (Exhibit 1 to Hutchinson's Response to Plaintiff's Motion for Summary Judgment, pp. 169, 323), an August 14, 2006 report stating that a recent x-ray revealed signs of an old fracture, but no acute fracture or other bone abnormality (Exhibit 1 to Hutchinson's Response to Plaintiff's Motion for Summary Judgment, p. 610), and more reports demonstrating that plaintiff was prescribed medication and provided a cane in response to his complaints (Exhibit 1 to Hutchinson's Response to Plaintiff's Motion for Summary Judgment, pp. 57, 99, 365). Given that evidence regarding the extent of plaintiff's treatment, in addition to highlighting the conflicting evidence provided by plaintiff, Hutchinson has demonstrated that, at the very least, a genuine issue of material fact exists in this case with regard to his alleged deliberate indifference.

**B.  Hutchinson's Motion for Summary Judgment**

**1.  Evidence Regarding Treatment**

Exhibit A to Hutchinson's Motion for Summary Judgment[6] and Exhibits A-C of Plaintiff's Response to Hutchinson's Motion for Summary Judgment provided much of the same evidence regarding treatment.  Each of plaintiff's claims will be discuss separately.

With respect to treatment of his eye, Plaintiff was diagnosed as early as October 1, 2002 with bullous keratopathy (Hutchinson's Exhibit A, pp. 55, 56; Plaintiff's Exhibit A, pp. 10, 18), and he was recommended or scheduled for a corneal transplant several times; November 2002 (Plaintiff's Exhibit A, p. 11), February 5, 2003 (Plaintiff's Exhibit A, p. 16), March 4, 2004 ((Hutchinson's Exhibit A, pp. 163, 181; Plaintiff's Exhibit A, p. 32), May 25, 2004 ((Hutchinson's Exhibit A, p. 146; Plaintiff's Exhibit A, p. 34).  Despite those recommendations, plaintiff did not receive a corneal transplant until September 2005.  On March 3, 2003, prison officials denied the eye surgery (Plaintiff's Exhibit A, p. 17).  In November 2003, Plaintiff was subject to an "inappropriate transfer" to a facility where he could not undergo the surgery and he had to be returned to an appropriate facility to facilitate his eye care (Hutchinson's Exhibit A, pp. 76, 267; Plaintiff's Exhibit A, pp. 23-24).  In January 30, 2004, plaintiff was again denied a

---

[6]The court would note that, while they are assigned Bates numbers, the medical records in Exhibit A to Hutchinson's Motion for Summary Judgment are not arranged in sequential order, or in any order for that matter.  It is not unknown why Hutchinson's counsel chose to do this, but it clearly makes an examination of the motion more time consuming.  Hutchinson's counsel is strongly advised to organize any exhibits in the future; otherwise, they will not be considered by the court.

corneal transplant (Plaintiff's Exhibit A, p. 28). Plaintiff eventually received the corneal

transplant on September 16, 2004 ((Hutchinson's Exhibit A, pp. 143-144, 147)

With respect to the colonoscopy, while one was ordered for plaintiff on September 27,

2002, it was later rejected on October 18, 2002 (Hutchinson's Exhibit A, pp. 159, 353-354;

Plaintiff's Exhibit C, pp. 63, 67). On January 27, 2003, another colonoscopy was recommended

by a Dr. Sharma (Plaintiff's Exhibit C, p. 76). In February 2003, plaintiff had rectal complaints

(Plaintiff's Exhibit C, p. 72) and visited an emergency room for severe abdominal pains

(Plaintiff's Exhibit C, pp. 74-75).

On April 18, 2003, a colonoscopy was attempted, but was not completed because of

either a lack of patient cooperation, a redundant colon or because the patient did not receive any

preparation whatsoever (Hutchinson's Exhibit A, p. 38; Plaintiff's Exhibit C, pp. 79-80, 82). A

May 16, 2003 progress note noted that another colonoscopy needed to be rescheduled (Plaintiff's

Exhibit C, p. 81). On January 16, 2004, a colonoscopy was scheduled for June 6, 2003

(Plaintiff's Exhibit C, p. 84). On March 16, 2004, a Dr. Casey again recommended that plaintiff

get a colonoscopy (Plaintiff's Exhibit C, p. 87; Hutchinson's Exhibit A, pp. 176, 179). The

colonoscopy was attempted on July 12, 2004, but again it was not completed (Hutchinson's

Exhibit A, pp. 160-168; Plaintiff's Exhibit C, p. 90). However, on August 31, 2004, an air

contrast colon study done by a Dr. Henderson gave the impression of diverticulosis (Plaintiff's

Exhibit C, p. 94). On February 14, 2006, another air contrast colon exam was attempted by a Dr.

Mindlin, but it was not completed due to plaintiff's abdominal pain (Plaintiff's Exhibit C, p. 97).

On May 18, 2006, a colonoscopy of plaintiff was completed by Dr. Ullah. Dr. Ullah

recommended a high fiber diet and another colonoscopy in three years (Plaintiff's Exhibit C, p. 98).

With respect to the treatment of plaintiff's elbow, as early as April 20, 2002, plaintiff had left elbow pain and was unable to fully extend his arm (Plaintiff's Exhibit B, p. 40). On May 2, 2002, an examination of plaintiff's left shoulder revealed evidence of old trauma with radial head fracture and arthrosis about the coronoid process and the olecranon. There was no evidence of acute fracture or acute osseous abnormality (Plaintiff's Exhibit B, p. 41).

On June 4, 2002, plaintiff complained of chronic left elbow pain and of an inability to extend his arm (Plaintiff's Exhibit B, p. 42). On June 10, 2002, a steroid injection was attempted, but it was not performed because of improper equipment (Plaintiff's Exhibit B, p. 44). Plaintiff continued to complain of chronic elbow pain on June 5, 2003 (Plaintiff's Exhibit B, p. 46) and August 14, 2003 (Plaintiff's Exhibit B, p. 47). However, plaintiff could not be examined on August 14, 2003 because he was uncooperative (Hutchinson's Exhibit A, p. 95).

A November 9, 2004 examination by a Dr. Henderson revealed evidence of old trauma at the elbow and arthritic changes (Plaintiff's Exhibit B, p. 49). In August 2006, plaintiff again complained of elbow pain before being examined and x-rayed (Hutchinson's Exhibit A, p. 33; Plaintiff's Exhibit B, p. 50-52). On September 19, 2006, an order noted that plaintiff was to be provided a left arm sling through March 31, 2006 (Plaintiff's Exhibit B, p. 53).

**2. Objective Prong**

Hutchinson first argues that he is entitled to summary judgment because plaintiff did not have a serious medical need satisfying the objective prong of his deliberate indifference claim. As discussed above, "'[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person,' this obviousness is itself sufficient to satisfy the objective component of the adequate medical care test." <u>Johnson</u>, 398 at 874. Moreover, even if the if the need involves minor needs or non-obvious complaints of a serious need for medical care, it can still constitute deliberate indifference where the plaintiff places verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment. <u>Johnson</u>, 398 F.3d at 874.

In this case, plaintiff's evidence shows that, at the very least, genuine issues of material fact exist with respect to whether plaintiff had serious medical needs. With respect to his eye surgery claim, he repeatedly complained of pain and was recommended for a corneal transplant numerous times. With respect to his colonoscopy claim, doctors repeatedly recommended him for colonoscopies, and barium enemas. With respect to his elbow claim, plaintiff complained of "chronic pain" for extended periods of time and doctors provided him with medications, a sling and a cane. Given the extent of plaintiff's complaints and the extent of the treatment plaintiff received, a jury could reasonably find that plaintiff had a serious need for medical care that was "so obvious that even a layperson would easily recognize the necessity for a doctor's attention." <u>Blackmore</u>, 390 F.3d at 899.

### 3. Subjective Prong

Hutchinson also argues that he is entitled to summary judgment because there is no genuine issue of material fact with respect to the subjective prong of plaintiff's deliberate indifference claim. To satisfy the subjective component of the adequate medical care test, the plaintiff must demonstrate that the defendant "subjectively perceived a risk of harm and then disregarded it." Comstock v. McCrary, 273 F.3d 693, 703 (6th Cir. 2001). Moreover, as discussed above, the subjective prong requires personal involvement by a defendant in the constitutional violation. Copeland, 57 F.3d at 481.

In this case, plaintiff's complaint does not state a specific claim against Hutchinson. Nor do any of the medical records provided by the parties suggest that Hutchinson had any role in plaintiff's treatment. To the extent that plaintiff alleges Hutchinson is liable as a supervisor, "supervisory official may not be held liable under § 1983 for the misconduct of those the official supervises unless the plaintiff demonstrates that 'the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it.'" Combs v. Wilkerson, 315 F.3d 548, 558 (6th Cir. 2002), quoting Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir.1984). Moreover, "[a]t a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." Hays v. Jefferson County, Ky., 668 F.2d 869, 874 (6th Cir. 1982). Plaintiff has made no such showing, or any showing at all, regarding Hutchinson's involvement in this case and he is therefore entitled to summary judgment

**C.  Sweeton, Cooke, Maystead, Cummings, Vasbinder, Pramstaller, Hammond, Naylor, Epp, Engstrom and Gerguerk's Motion for Summary Judgment**

**1.  Cummings, Vasibinder, Maystead and Cooke**

As discussed above, plaintiff's claims against Cummings, Vasibinder, Maystead and Cooke were made pursuant to 42 U.S.C. § 1985 and that plaintiff's § 1985 claims have not been exhausted.  Pursuant to the Prison Litigation Reform Act of 1995 (PLRA), 110 Stat. 1321-71, as amended 42 U.S.C. §§ 1997e *et seq.*, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Accordingly, exhaustion of available administrative remedies is mandatory in order for prisoners to bring a claim in federal court.  Jones v. Bock, __ U.S. __, __, 127 S.Ct. 910, 914, 166 L.Ed.2d 798 (2007); Woodford v. Ngo, __ U.S. __, __, 126 S.Ct. 2378, 2383, 165 L.Ed.2d 368 (2006).  Not only must the prisoner exhaust all available remedies but such exhaustion must be proper, including "compliance with an agency's deadlines and other critical procedural rules."  Woodford, 126 S.Ct. at 2386 (holding that an inmate's exhaustion must be in compliance with applicable grievance procedures, specifically deadlines, because "no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings").  Given plaintiff's failure to properly exhaust his administrative remedies before filing his § 1985 claims against Cummings, Vasibinder, Maystead and Cooke, they should be granted summary judgment.

### 2. Pramstaller, Naylor, Epp, Engstrom, Gerguerk, Sweeton and Hammond

Pramstaller, Naylor, Epp, Engstrom, Gerguerk, Sweeton and Hammond argue that they are entitled to summary judgment because of their qualified immunity. In a suit against an officer for an alleged violation of a constitutional right, the requisites of a qualified immunity defense must be considered in proper sequence. Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive. Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." Saucier v. Katz, 533 U.S. 194, 200; 121 S.Ct. 2151; 150 L.Ed.2d 272 (2001), quoting Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). The privilege is an immunity from suit and not a mere defense to liability. Saucier, 533 U.S. at 200. As a result, courts have "repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation." Hunter v. Bryant, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam).

A court required to rule upon the qualified immunity issue must first consider whether the facts alleged show the officer's conduct violated a constitutional right. Saucier, 533 U.S. at 201. If a violation could be shown, the court must then ask whether that constitutional right was clearly established. "This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition; and it too serves to advance understanding of the law and to allow officers to avoid the burden of trial if qualified immunity is applicable." Saucier, 533 U.S. at 201.

With respect to the question of whether defendants' conduct violated a constitutional right, defendants have failed to demonstrate that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. As mentioned numerous times above, plaintiff has three separate deliberate indifference claims.

### a. Eye

In response to plaintiff's claim that defendants prevented plaintiff from getting eye surgery, defendants argue that "Plaintiff has not come forward with sufficient evidence that Defendants have denied him medical treatment" and point to the affidavit plaintiff attached to his motion for summary judgment, which states that plaintiff underwent eye surgery on September 15, 2004, but that the surgery was not completed. (Defendants' Motion for Summary Judgment, p. 5.)

By merely pointing to plaintiff's lack of evidence in support of plaintiff's motion for summary judgment, defendants appear to misunderstand their burden in making their motion for summary judgment. With respect to their motion, they, as the moving party, bear the initial burden of demonstrating the absence of a genuine issue of material fact and plaintiff must come forward with specific facts showing there is a genuine issue for trial only if defendants carried their initial burden. Matsushita, 475 U.S. at 587, 106 S.Ct. 1348. Moreover, the evidence defendants point to only shows that plaintiff had incomplete eye surgery on September 15, 2004 while plaintiff claims that he needed surgery as early as eight months before his incarceration and that defendants improperly denied the surgery for years.

In any event, even if defendants did meet their initial burden, plaintiff has come forth with evidence demonstrating that a genuine issue of material fact is in dispute with respect to the alleged denial of eye surgery. Plaintiff's response to defendants' motions for summary judgment shows that plaintiff was diagnosed as early as October 1, 2002 with bullous keratopathy (Exhibit A to Plaintiff's Response to Defendants' Motions for Summary Judgment, pp. 10, 18), and that he was recommended or scheduled for a corneal transplant several times; November 2002 (Exhibit A to Plaintiff's Response to Defendants' Motions for Summary Judgment, p. 11), February 5, 2003 (Exhibit A to Plaintiff's Response to Defendants' Motions for Summary Judgment, p. 16), March 4, 2004 (Exhibit A to Plaintiff's Response to Defendants' Motions for Summary Judgment, p. 32), May 25, 2004 (Exhibit A to Plaintiff's Response to Defendants' Motions for Summary Judgment, p. 34). Despite those recommendations, plaintiff did not receive a corneal transplant until September 2005. On March 3, 2003, prison officials denied the eye surgery (Exhibit A to Plaintiff's Response to Defendants' Motions for Summary Judgment, p. 17). In November 2003, plaintiff was subject to an "inappropriate transfer" to a facility where he could not undergo the surgery and he had to be returned to an appropriate facility to facilitate his eye care (Exhibit A to Plaintiff's Response to Defendants' Motions for Summary Judgment, pp. 23-24). In January 30, 2004, plaintiff was again denied a corneal transplant (Exhibit A to Plaintiff's Response to Defendants' Motions for Summary Judgment, p. 28). Given that evidence of doctors' recommendations of surgery and the delays in plaintiff's treatment, a reasonable jury could find for plaintiff and, therefore, a genuine issue of material fact is in dispute.

**b.  Colonoscopy**

In response to plaintiff's claim that defendants prevented plaintiff from getting a colonoscopy since plaintiff's arrival in prison, defendants merely provide evidence that, on July 12, 2004, a colonoscopy was attempted but not completed (Pramstaller, Naylor, Epp, Engstrom, Gerguerk, Sweeton and Hammond 's Motion for Summary Judgment, Exhibit 3).  As with the denial of eye surgery claim, defendants have once again failed to address plaintiff's claims regarding the alleged delays in treatment.  By failing to submit any evidence with respect to plaintiff's medical treatment during the years prior to the attempted colonoscopy, defendants have failed to demonstrate the absence of a genuine issue of material fact and they are not entitled to summary judgment on plaintiff's deliberate indifference claim based on the denial of a colonoscopy.

In any event, even if defendants did meet their initial burden, plaintiff has come forth with evidence demonstrating that a genuine issue of material fact is in dispute with respect to the alleged denial of eye surgery.  Exhibit C of plaintiff's response to defendants' motions for summary judgment shows that, while a colonoscopy was ordered on September 27, 2002, it was later rejected on October 18, 2002 (Exhibit C to Plaintiff's Response to Defendants' Motions for Summary Judgment, pp. 63, 67).  On January 27, 2003, another colonoscopy was recommended by a Dr. Sharma (Exhibit C to Plaintiff's Response to Defendants' Motions for Summary Judgment, p. 76).  In February 2003, plaintiff had rectal complaints (Exhibit C to Plaintiff's Response to Defendants' Motions for Summary Judgment, p. 72) and visited an emergency room

for severe abdominal pains (Exhibit C to Plaintiff's Response to Defendants' Motions for Summary Judgment, pp. 74-75).

On April 18, 2003, a colonoscopy was attempted, but was not completed because of either a lack of patient cooperation, a redundant colon or because the patient did not receive any preparation whatsoever (Exhibit C to Plaintiff's Response to Defendants' Motions for Summary Judgment, pp. 79-80, 82). A May 16, 2003 progress note noted that another colonoscopy needed to be rescheduled (Exhibit C to Plaintiff's Response to Defendants' Motions for Summary Judgment, pp. 81). On January 16, 2004, a colonoscopy was scheduled for June 6, 2003 (Exhibit C to Plaintiff's Response to Defendants' Motions for Summary Judgment, p. 84) On March 16, 2004, a Dr. Casey again recommended that plaintiff get a colonoscopy (Exhibit C to Plaintiff's Response to Defendants' Motions for Summary Judgment, p. 87).

The colonoscopy was attempted on July 12, 2004, but again it was not completed (Exhibit C to Plaintiff's Response to Defendants' Motions for Summary Judgment, p. 90). However, on August 31, 2004, an air contrast colon study done by a Dr. Henderson gave the impression of diverticulosis (Exhibit C to Plaintiff's Response to Defendants' Motions for Summary Judgment, p. 94). On February 14, 2006, another air contrast colon exam was attempted by a Dr. Mindlin, but it was not completed due to plaintiff's abdominal pain (Exhibit C to Plaintiff's Response to Defendants' Motions for Summary Judgment, p. 97). On May 18, 2006, a colonoscopy of plaintiff was completed by Dr. Ullah. Dr. Ullah recommended a high fiber diet and another colonoscopy in three years (Exhibit C to Plaintiff's Response to Defendants' Motions for Summary Judgment, p. 98).

While that evidence provided by plaintiff indicates that plaintiff received some treatment, it is also replete with examples of failed attempts at and delays in plaintiff getting a colonoscopy. Moreover, those failures and delays occurred despite the repeated recommendations of doctors discussing plaintiff's need for the colonoscopy. Whether or not plaintiff will ultimately prevail on his claim, he has demonstrated that a genuine issue of material fact exists with respect to his deliberate indifference claim based on the denial of a colonoscopy, assuming that defendants even met their initial burden.

### c. Left Elbow

In response to plaintiff's claim that defendants denied him treatment for his elbow, defendants provided an August 2, 2004 affidavit from Pramstaller stating that plaintiff was "presently prescribed Naprosyn 800 mg 2 times a day" (Exhibit 4 to Pramstaller, Naylor, Epp, Engstrom, Gerguerk, Sweeton and Hammond's Motion for Summary Judgment, ¶ 13) and that the elbow surgery plaintiff desired is "generally of limited value." (Exhibit 4 to Pramstaller, Naylor, Epp, Engstrom, Gerguerk, Sweeton and Hammond's Motion for Summary Judgment, ¶ 12). Given that small amount of evidence provided by defendants, they have failed to demonstrate the absence of a genuine issue of material fact. While defendants provided evidence that plaintiff was receiving medications on August 2, 2004, which was after plaintiff's complaint was filed, plaintiff had complained of elbow problems long before that. Moreover, defendants' only other evidence consists of a vague statement that surgery would be of limited value to plaintiff.

If defendants did meet their initial burden, plaintiff has failed to come forth with evidence demonstrating that a genuine issue of material fact is in dispute with respect to the alleged denial of eye surgery. Plaintiff's response to defendants' motions for summary judgment displays that, as early as April 20, 2002, plaintiff had left elbow pain and was unable to fully extend his arm (Exhibit C to Plaintiff's Response to Defendants' Motions for Summary Judgment, p. 40). On May 2, 2002, an examination of plaintiff's left shoulder revealed evidence of old trauma with radial head fracture and arthrosis about the coronoid process and the olecranon. There was no evidence of acute fracture or acute osseous abnormality (Exhibit C to Plaintiff's Response to Defendants' Motions for Summary Judgment, p. 41).

On June 4, 2002, plaintiff complained of chronic left elbow pain and an inability to extend his arm (Exhibit C to Plaintiff's Response to Defendants' Motions for Summary Judgment, p. 42). On June 10, 2002, a steroid injection was attempted, but it was not performed because of improper equipment (Exhibit C to Plaintiff's Response to Defendants' Motions for Summary Judgment, p. 44). Plaintiff continued to complain of chronic elbow pain on June 5, 2003 (Exhibit C to Plaintiff's Response to Defendants' Motions for Summary Judgment, p. 46) and August 14, 2003 (Exhibit C to Plaintiff's Response to Defendants' Motions for Summary Judgment, p. 47).

A November 9, 2004 examination by a Dr. Henderson revealed evidence of old trauma at the elbow and arthritic changes (Exhibit C to Plaintiff's Response to Defendants' Motions for Summary Judgment, p. 49). In August 2006, plaintiff again complain of elbow pain before being examined and x-rayed (Exhibit C to Plaintiff's Response to Defendants' Motions for Summary

Judgment, pp. 50-52).  On September 19, 2006, an order noted that plaintiff was to be provided a left arm sling through March 31, 2006 (Exhibit C to Plaintiff's Response to Defendants' Motions for Summary Judgment, p. 53).

According to plaintiff's complaint, while a private doctor recommended that plaintiff have reconstructive surgery on his left elbow eight months before plaintiff's incarceration, defendants refuse to send plaintiff to see a doctor of orthopedics (Complaint, ¶ 12).  Despite those claims, nothing in the evidence plaintiff provided suggests that any doctors recommended surgery or that a referral to a doctor of orthopedics was necessary or advisable.  Without such a showing, plaintiff would have failed to meet his burden, assuming that defendants met their initial burden.

### d.  Clearly Established Right

Defendants also argue that they are entitled to qualified immunity because any constitutional right they violated was not clearly established.  However, the general right of a prisoner to receive medical care was set out in Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), which provides that prison officials may not be deliberately indifferent to the medical needs of their prisoners.  See also Rich v. City of Mayfield Heights, 955 F.2d 1092, 1096 (6th Cir. 1992).  Given those cases, and the cases cited above discussing the standard for a deliberate indifference claim, the law in the Sixth Circuit has "clearly established" that plaintiff had a due process right to adequate medical care.

### V.  Conclusion

For the reasons discussed above, the court recommends that plaintiff's motion for summary judgment be **DENIED** and that Hutchinson's motion for summary judgment be **GRANTED**. This court also recommends that Pramstaller, Naylor, Epp, Engstrom, Gerguerk, Sweeton, Cooke, Maystead, Cummings, Vasbinder, and Hammond's motion for summary judgment be **GRANTED IN PART** and **DENIED IN PART**, with only Cooke, Maystead, Cummings and Vasbinder being granted summary judgment. The claims against Pramstaller, Naylor, Epp, Engstrom, Gerguerk, Sweeton and Hammond should proceed.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length

unless, by motion and order, the page limit is extended by the court.  The response shall address

each issue contained within the objections specifically and in the same order raised.


s/Virginia M. Morgan
Virginia M. Morgan
United States Magistrate Judge


Dated:  February 20, 2008

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and plaintiff via
the Court's ECF System and/or U. S. Mail on February 20, 2008.

s/Jane Johnson
Case Manager to
Magistrate Judge Virginia M. Morgan